**STATE of Minnesota, Plaintiff,**

v.

**Michael LARIVEE, Defendant.**

**No. C2–01–1942.**

Court of Appeals of Minnesota.

April 16, 2002.

Review Granted June 26, 2002.

Mike Hatch, Attorney General, St. Paul; and Todd P. Zettler, Scott Joint Prosecution, Shakopee, for plaintiff.

Jeffrey S. Sheridan, Strandemo & Sheridan, Eagan, for defendant.

Considered and decided by WILLIS, Presiding Judge, SHUMAKER, Judge, and PARKER, Judge.*

## OPINION

GORDON W. SHUMAKER, Judge.

The state charged Michael Larivee with the driving offenses of refusing to submit to alcohol testing and driving under the influence of alcohol—child endangerment.

After his arrest, Larivee refused to take an alcohol test requested by law enforcement authorities, but instead asked to be tested independently. The authorities treated Larivee's request as a test refusal.

Larivee moved to dismiss the charges, arguing that he had statutory and constitutional rights to independent testing. The district court ruled that (1) Larivee was collaterally estopped from challenging the alleged implied-consent violation because the court in a civil proceeding had already decided that issue; (2) there was no statutory or constitutional violation as to the test-refusal charge; and (3) Larivee was denied due process on the charge of driving while under the influence of alcohol—child endangerment when law-enforcement authorities refused to permit him to obtain independent alcohol testing. The district court then certified the case to the court of appeals as presenting an important and doubtful issue.

We hold that the district court erred in ruling that there was a denial of Larivee's due-process rights. We also answer the certified question in the negative.

## FACTS

Appellant Michael Larivee was driving his car in Jordan with his minor children as passengers. When he made an extremely wide turn and then drove through a stop sign, a Jordan police officer stopped him.

After Larivee did poorly on field-sobriety maneuvers and failed a preliminary breath test, the officer arrested him and took him to the police station.

At the station, the officer read the implied-consent advisory to Larivee, who said that he wanted to speak with a lawyer. The officer allowed him to call a lawyer. When Larivee finished his conversation with the lawyer, the officer requested that he submit to alcohol testing. Larivee replied that, on his lawyer's advice, he would not take a test, but stated: "However, I would request my own test from an individual outfit that would come out here to the jail station." The officer then brought Larivee to the county jail.

A deputy sheriff at the county jail denied Larivee's request for an independent test because the deputy knew Larivee had already refused the alcohol test that the arresting officer had requested, and the deputy believed that Larivee could have an independent test only after he permitted law-enforcement authorities to test him.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

The state charged Larivee with the crimes of test refusal and driving under the influence of alcohol—child endangerment, as well as with a stop sign violation. Arguing that law-enforcement personnel violated his constitutional and statutory rights by refusing to allow independent alcohol testing, Larivee moved to dismiss the charges.

The district court ruled that there was no constitutional violation as to the test refusal charge but that Larivee's

> constitutional right to a fair trial and due process was violated as it relates to Count II (DUI—child endangerment), when jail staff refused [Larivee's] request to obtain an independent test.

The court then ordered the "case * * * certified to the Minnesota Court of Appeals pursuant to Minn. R.Crim. P. 28.03."

## ISSUE

Is a defendant's constitutional right to due process and a fair trial violated when the defendant refuses to submit to a police-administered blood-alcohol-level test and instead requests an independent test but is denied the opportunity to obtain the independent test?

## ANALYSIS

We first consider this court's jurisdiction over the certification. A district court may, upon a motion to dismiss a complaint, certify an issue as important or doubtful. Minn. R.Crim. P. 28.03. The importance of an issue ·"increases with the probability that resolution of the issue will have statewide impact and the probability of reversal." *King v. Watonwan Farm Serv. Co.*, 430 N.W.2d 24, 26 (Minn.App. 1988). An issue is doubtful if there is no controlling precedent, or if there is a question of first impression with substantial ground for difference of opinion. *Emme v.*

*C.O.M.B., Inc.*, 418 N.W.2d 176, 179–80 (Minn.1988).

Before certifying a question, the district court must specify the precise legal question to be answered. *State v. Brink*, 500 N.W.2d 799, 802 (Minn.App.1993). If the district court's question is imprecise or inaccurate, this court has authority to clarify the question. *Id.*

The district court did not specify the precise legal question certified, but we recognize the issue to be as we have stated it. Thus, the question properly before us is whether a defendant's rights to due process and a fair trial are violated when he is denied his request to obtain an independent blood-alcohol-level test after he first refuses to submit to the police-administered test. This precise question has statewide impact and is one of first impression.

The implied-consent statute in effect when Larivee requested independent testing provided for independent testing after a police-administered test:

> The person tested has the right to have someone of the person's own choosing administer a chemical test or tests *in addition* to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, *after* the test administered at the direction of a peace officer, and at no expense to the state.

Minn.Stat. § 169.123, subd. 3(a) (1998) (emphasis added).

Larivee argues that the police-administered test is not a condition precedent to independent testing, but, rather, the statute merely sets the timing sequence of testing. Accordingly, he contends that the authorities impermissibly denied him his statutory right to an independent alcohol

test. He further asserts that any interpretation of the implied-consent statute that would result in the forfeiture of the right to an independent test if a police-administered test is initially refused would render the statute unconstitutional. We disagree with both arguments.

▮ Statutory interpretation is a question of law, which this court reviews de novo. *State v. Shifflet*, 556 N.W.2d 224, 226 (Minn.App.1996). The purpose of statutory interpretation is to determine the intention of the legislature. *Id.* "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). The party challenging the constitutionality of a statute must show beyond a reasonable doubt that the statute is unconstitutional. *Id.*

▮ Under basic rules of statutory construction, words and phrases are to be construed according to their plain and ordinary meaning. *Baker v. Ploetz*, 616 N.W.2d 263, 268 (Minn.2000). Minnesota's implied-consent statute is straightforward and clearly indicates that the *statutory* right to an independent test of choice arises *after* a person has submitted to the police-administered test. *See Schmidt v. Comm'r of Pub. Safety*, 486 N.W.2d 473, 475 (Minn.App.1992) (holding right to *additional* testing occurs *after* person submits to testing under the implied consent law). The statutory right to obtain an *additional* test is thus a limited right. *Theel v. Comm'r of Pub. Safety*, 447 N.W.2d 472, 474 (Minn.App.1989), *review denied* (Minn. Jan. 8, 1990). Larivee has not shown that this clear statute is intended to mean anything other than what it plainly says. Thus, a proper reading of the implied-consent statute reveals that

submission to a police-administered alcohol test is a condition precedent to the right to obtain an independent test.

In applying the Minnesota statute, the district court agreed with the reasoning in a Montana Supreme Court case, *State v. Swanson*, 222 Mont. 357, 722 P.2d 1155, 1157 (1986). However, that case is inapposite because the Montana statute it interprets does not state that a defendant's right to an independent test is conditioned upon submission first to the police test. Mont.Code Ann. § 61–8–405(2).

▮ Because Larivee refused the offer of a police-administered test, he failed to satisfy the condition precedent to an independent test. The law-enforcement authorities did not violate Minnesota's implied-consent law by declining to permit Larivee to obtain an independent test.

▮ Larivee also contends that he was denied his constitutional due-process right to obtain exculpatory evidence when the deputy sheriff denied him an opportunity to obtain an independent test. *See Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (establishing due-process rights to material exculpatory evidence). The district court agreed that Larivee was denied his constitutional right to due process and a fair trial on the charge of DWI—child endangerment when he was not permitted to obtain an independent test.

▮ To establish a due-process violation, a defendant must show that (1) the state willfully or inadvertently suppressed the evidence; (2) the evidence at issue was favorable to him; and (3) he was prejudiced as a result. *Woodruff v. State*, 608 N.W.2d 881, 886 (Minn.2000).

First, under the undisputed facts of this case, law-enforcement authorities did not violate Minnesota law or otherwise inten-

tionally or willfully prevent Larivee from obtaining an independent test. The authorities properly applied the plain language of the implied-consent statute. Larivee decided not to satisfy the condition precedent to independent testing and thus chose not to trigger his right to an additional test. There is nothing in this record to show or to intimate that law-enforcement authorities willfully or inadvertently, by words, acts, or omissions, interfered with Larivee's ability to satisfy the statutory condition precedent.

Second, Larivee has failed to show that the independent test results would most likely be favorable to him. The record shows that Larivee failed both the field-sobriety tests and the preliminary breath test. Furthermore, it is not disputed that Larivee also exhibited the clinical indicia of intoxication. He had glassy and bloodshot eyes, an alcohol odor on his breath, and his speech was slurred. Larivee points to nothing to suggest that an independent test would not have corroborated intoxication.

■ Finally, there is no merit in Larivee's claim that he is deprived of a defense. He can still defend the DWI charge, albeit without a chemical test as evidence. And, of course, the state is similarly without a chemical test to use against him.

*Miscellaneous*

■ Larivee argues that the district court erred in concluding that his due-process rights were not violated with regard to the test-refusal charge. This issue, however, has not been properly certified as important and doubtful. We therefore decline to address it.

■ The state argues that collateral estoppel precludes a defendant from relitigating the issue of his claimed statutory right to independent testing because this issue was decided in the civil implied-consent proceeding. But this court has specifically stated that the result in a civil proceeding cannot be used to bind a criminal defendant on any element of a crime. *State v. Wagner,* 637 N.W.2d 330, 337 (Minn.App.2001). Thus, collateral estoppel does not apply here.

## DECISION

The district court erred in concluding that Larivee's constitutional right to due process and a fair trial relating to the DWI—child endangerment charge was violated when Larivee's request for an independent test was denied because he refused to first submit to a police-administered test. Under Minnesota's presumptively constitutional implied-consent law, a defendant's submission to a police-administered blood-alcohol-level test is a condition precedent to his right to obtain an independent test.

**Certified question answered.**