NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STATE OF ALASKA,

Petitioner,

v.

AARON MATTHEW JOHNSON,

Respondent.

Court of Appeals No. A-13492
Trial Court No. 4FA-18-02557 CR

O P I N I O N

No. 2716 — December 10, 2021

Petition for Review from the District Court, Fourth Judicial District, Fairbanks, Ben A. Seekins, Judge.

Appearances: Timothy W. Terrell, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Clyde "Ed" Sniffen Jr., Acting Attorney General, Juneau, for the Petitioner. Emily Jura, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Respondent.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge HARBISON.

Aaron Matthew Johnson was arrested by Alaska State Troopers for driving under the influence (DUI). He subsequently submitted to a breath test which revealed that his blood alcohol content exceeded .08 percent. Johnson decided to obtain an independent blood test from a person of his own choosing under AS 28.35.033(e), but

during a conversation that followed, a trooper dissuaded Johnson from obtaining such a test and instead Johnson obtained an independent test at the State's expense. Johnson subsequently filed a motion to suppress his breath test result, and the trial court granted this motion.

The State has petitioned for review of the trial court's order suppressing the evidence. For the reasons explained here, we conclude that the trial court erred by imposing an exclusionary sanction under the facts of this case, and we reverse the trial court's order.

*Why we conclude that application of the exclusionary rule was not warranted under the facts of this case*

In Alaska, a person arrested for driving under the influence has both a constitutional and a statutory right to obtain an independent test to challenge the accuracy of a police-administered breath test.[1] In addition, the Alaska Supreme Court has explained that, in order to satisfy due process, the police must make reasonable and good-faith efforts to assist a defendant in obtaining an independent test.[2]

However, in *Gundersen v. Anchorage*, the supreme court explained that due process does not require that the police honor a defendant's *choice* of independent tests.[3] As long as the government-selected facility will administer a reliable test, the defendant does not have a *constitutional* right to an independent test of their own choosing.[4]

---

[1]   *Gundersen v. Anchorage*, 792 P.2d 673, 674-75 (Alaska 1990); AS 28.35.033(e).

[2]   *Gundersen*, 792 P.2d at 678.

[3]   *Id.* at 677-78.

[4]   *Id.*

Alaska law nevertheless provides a *statutory* right to an independent test of the defendant's own choosing.[5] Alaska Statute 28.35.033(e), provides, in pertinent part:

> The person tested may have a physician, or a qualified technician, chemist, registered or advanced nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable to do so, is likewise admissible in evidence.

This statute also contains a provision that requires the police to inform a defendant of their right to an independent test of their own choosing and to make reasonable and good-faith efforts to assist the defendant in obtaining such a test:

> The person who administers the chemical test shall clearly and expressly inform the person tested of that person's right to an independent test described under this subsection, and, if the person being tested requests an independent test, the department shall make reasonable and good-faith efforts to assist the person being tested in contacting a person qualified to perform an independent chemical test of the person's breath or blood.[6]

In the present case, Johnson was arrested for DUI and then submitted to a breath test which revealed that his blood alcohol content was .125 percent, which is above the legal limit of .08 percent. A trooper subsequently read Johnson a notice

---

5    AS 28.35.033(e).

6    *Id.*

informing him that he had the right to "an independent chemical test at the government's expense" or to "an independent chemical test of [Johnson's] own choosing." The trooper explained that if Johnson chose the independent test at the State's expense, the State would make arrangements for the blood draw and for storage of the blood. The trooper also explained that, if Johnson wanted an independent test of his own choosing, he would be required to make arrangements and pay for the test himself.

After hearing this explanation, Johnson told the trooper that he wanted to pay for the test himself. Johnson then asked several questions about making arrangements for an independent test:

> *Johnson*: So I can request a personal person to draw it for me?

> *Trooper*: Well, no. You're going to have to call somebody who can draw blood.

> *Johnson*: Well obviously, yeah.

> *Trooper*: But do you have somebody that you can do that with right now?

> *Johnson*: I don't know the exact qualifications, but yeah, I have someone.

> *Trooper*: I mean, it can't just be, like, your friend or something. It's going to have to be, like, a —

> *Johnson*: It would be my mom. She's an actual registered nurse — surgeon nurse and everything. Can I request her?

> *Trooper*: Hmm. I think it would have to be an actual like medical practice or something.

> *Johnson*: Yeah, all right.

> *Trooper*: If you wanted, we can take you down to FMH [Fairbanks Memorial Hospital] and they'll draw and we'll — we'll put it in evidence here for you. And it won't cost you anything either.
>
> *Johnson*: If it won't cost me anything, I'll try it. Yeah.

The trooper then clarified, "Okay. It's up to you, though," and Johnson reiterated that he wanted to "try it" — *i.e.*, to get an independent blood test paid for by the State. The trooper accordingly transported Johnson to Fairbanks Memorial Hospital where he had his blood drawn.

Prior to trial, Johnson's attorney filed a motion to suppress the result of the breath test, arguing that Johnson's right to an independent test of his own choosing had been violated and that suppression was the appropriate remedy. The trial court conducted an evidentiary hearing. At the hearing, the trooper, Johnson, and Johnson's mother testified.

The trooper explained that he had never before encountered a DUI arrestee who wanted an independent test of their own choosing rather than an independent test paid for by the State. According to the trooper, he was concerned that Johnson's mother would not have access to the proper equipment to draw blood in the middle of the night. When asked what he would do in this type of situation in the future, the trooper responded, "[J]ust to avoid this, I'd ask some more questions," and he agreed with the defense attorney's suggestion that he would give a defendant either type of independent test, as long as he could "figure out how to make [the test] actually come about."

For his part, Johnson testified that, based on the conversation he had with the trooper, he felt limited to the independent test provided by the State. And Johnson's

mother testified that she was a registered nurse and that she would have drawn her son's blood that night if she had been contacted.

The trial court granted Johnson's motion to suppress. The court found that the trooper had dissuaded Johnson from obtaining a test of his own choosing and also that the trooper needed to be deterred from future violations of AS 28.35.033(e). The trial court accordingly held that exclusion of the breath test result was required. This petition for review followed.

In the briefing before this Court, the State does not challenge the trial court's finding that the trooper dissuaded Johnson from obtaining a test of his own choosing. And the parties agree that Johnson ultimately did obtain an independent test — because he submitted to the test offered at Fairbanks Memorial Hospital. As a result, the question presented by this petition is whether the exclusionary rule is the appropriate remedy for the trooper's violation of Johnson's statutory right, even though Johnson's constitutional due process right to challenge the breath test by obtaining an independent test was not violated.[7]

When granting Johnson's motion to suppress, the trial court relied on the supreme court's opinion in *Ward v. State*.[8]

In *Ward*, the police refused to allow the defendant to have an independent test at the facility of his choosing but offered to provide one at a facility chosen by the State. Ward did not accept this offer, and as a result, he did not obtain an independent test. He then moved to suppress his breath test result, but the trial court denied his motion. On appeal, the supreme court concluded that Ward's breath test result must be suppressed.

---

[7] *See Gundersen*, 792 P.2d at 678.

[8] *Ward v. State*, 758 P.2d 87 (Alaska 1988).

In reaching this conclusion, the supreme court noted that it had applied the exclusionary rule in a related line of cases which involved the violation of a statutory right — specifically, the violation of AS 12.25.150(b), which gives a person arrested for DUI the right to consult with an attorney before submitting to a police-administered breath test.[9] The court stated that the rationale supporting application of the exclusionary rule in that context was equally compelling in the context of a violation of the statute providing the right to an independent test.

As explained by the supreme court, this rationale is twofold. First, the exclusionary rule should be applied when the police conduct is sufficiently unreasonable that an exclusionary remedy is warranted. And second, the exclusionary rule should be

---

[9]    *See, e.g.*, *Copelin v. State*, 659 P.2d 1206, 1214-15 (Alaska 1983) (holding that an exclusionary remedy is appropriate to deter future illegal conduct by police or when the statutory violation at issue had an effect on the defendant's ability to present a defense at trial); *Farrell v. Anchorage*, 682 P.2d 1128, 1131 (Alaska App. 1984) (failure of police to make even a minimal effort to accommodate the right to communicate with an attorney required suppression of breath test result); *Whisenhunt v. Dep't of Pub. Safety*, 746 P.2d 1298, 1300 (Alaska 1987) (excluding breath test result in a civil license revocation hearing where police violated the arrestee's right to consult with an attorney before taking the test); *Zsupnik v. State*, 789 P.2d 357, 361 (Alaska 1990) (holding that a person arrested for DUI had a statutory right to contact both a lawyer and a relative during the observation period and that violations of this statutory right for purposes related to the defense process requires exclusion of the breath test). *But see Kiehl v. State*, 901 P.2d 445, 448 (Alaska App. 1995) (because police misconduct did not result in deprivation of defendant's statutory right to consult an attorney, exclusionary rule did not apply); *Saltz v. Dep't of Pub. Safety*, 942 P.2d 1151, 1153-54 (Alaska 1997) (declining to apply exclusionary rule where trooper did not assist defendant in contacting an attorney after trooper had already begun to administer the breath test); *Grossman v. State*, 285 P.3d 281, 284-85 (Alaska App. 2012) (suppression of breath test was not appropriate remedy where police gave the defendant an opportunity to contact an attorney during the pre-test observation period and then declined to interrupt the administration of the breath test in order to give defendant an additional opportunity to contact an attorney).

applied when the statutory violation has an effect on the defendant's ability to present a defense at trial.[10]  Applying this rationale to the facts presented in *Ward*, the supreme court concluded that, because the police had "acted deliberately in denying [Ward] the right to [an independent] test," application of the exclusionary rule would serve to deter future illegal police conduct.[11]  The court also concluded that Ward "was unable, as a result of being denied a blood test, to attack the accuracy of his [police-administered breath test]," which negatively impacted his ability to present a defense.[12]  For these reasons, suppression of the result of the police-administered breath test was warranted.

We have repeatedly emphasized that the primary purpose of the exclusionary rule is deterrence of future illegal conduct by the police.  But, in cases following the supreme court's decisions in *Ward* and in *Copelin*, we have also applied the exclusionary rule to statutory violations that negatively impacted the defendant's ability to present a defense at trial.  For example, in *Lau v. State* and *MacLeod v. State*, we applied the exclusionary rule when the police, while acting in good faith, convinced the defendant to decline the opportunity for an independent blood test.[13]  In *Lau*, we emphasized that the defendant's "ability to present a defense at trial was diminished by the denial of a chance to directly attack the accuracy of the breath test result."[14]

We accordingly conclude that the exclusionary rule should be applied to violations of AS 28.35.033(e) when (1) the statutory violation has an effect on the

---

[10]  *Ward*, 758 P.2d at 90-91.

[11]  *Id.* at 90.

[12]  *Id.* at 91.

[13]  *Lau v. State*, 896 P.2d 825, 828-29 (Alaska App. 1995); *MacLeod v. State*, 28 P.3d 943, 944-45 (Alaska App. 2001).

[14]  *Lau*, 896 P.2d at 829.

defendant's ability to present a defense at trial or (2) the police conduct is sufficiently unreasonable that an exclusionary remedy is warranted.

On appeal, Johnson argues that the exclusionary rule should be applied whenever the police dissuade a defendant from obtaining an independent blood test of the person's own choosing, even if the defendant ultimately obtains an independent blood test at government expense. He notes that the supreme court applied the exclusionary rule in *Ward* after finding that the police deprived Ward of his statutory right to obtain an independent test by a facility of his own choosing and argues that the same outcome is required here.

But, as we have explained, in *Ward*, the police action prevented the defendant from obtaining *any* independent blood test, and as a result, Ward "was unable . . . to attack the accuracy of [the breath test]."[15] In this case, by contrast, Johnson did obtain an independent blood test. Although the police dissuaded Johnson from obtaining an independent blood test of his choosing, Johnson ultimately obtained an independent blood test at a facility selected by the government. Accordingly, the statutory violation did not impact Johnson's ability to present a defense at trial, and the supreme court's holding in *Ward* does not control the outcome of this case.[16]

The remaining question is whether the conduct by the police was sufficiently unreasonable to require exclusion of the evidence in order to deter future police misconduct.

At the evidentiary hearing on Johnson's motion to suppress, Johnson testified that, based on the conversation he had with the trooper, he felt limited to the

---

[15]  *Ward*, 758 P.2d at 91.

[16]  We reached a similar conclusion in our unpublished decision, *McCabe v. Anchorage*, 1998 WL 872385, at *3 (Alaska App. Dec. 16, 1998) (unpublished).

independent test provided by the State.  The trial court apparently accepted this testimony when it found that the trooper dissuaded Johnson from obtaining a test of his own choosing.  The State chose not to challenge that finding on appeal.  But this fact alone does not require exclusion of the evidence.

The statutory right to obtain an independent test of one's choosing under AS 28.35.033(e) — like the statutory right to contact and consult with counsel — is not an absolute right but instead is a limited one.[17]  Under AS 28.35.033(e), the police must make a "reasonable" effort to assist the accused in obtaining the requested independent test.[18]  If obtaining an independent test is impracticable or exceedingly burdensome, no test is constitutionally required.[19]

As a practical matter, police officers who are tasked with assisting the accused in obtaining an independent test "of the person's own choosing" must make a number of decisions.  For example, they must determine whether the location of the defendant's proposed provider is within a reasonable distance from the place of arrest, whether the proposed provider will be able to complete the test within a reasonable period of time, and what type of assistance in locating and selecting a private

---

[17]  *See Copelin*, 659 P.2d at 1211-1212, 1212 n.14 (holding that "the statutory right [under AS 12.25.150(b)] to contact and consult with counsel is not an absolute one (which might involve a delay long enough to impair testing results), but, rather a limited one of reasonable time and opportunity that can be reconciled with the implied consent statutes" and that, when an accused is denied this right, the burden of proof is on the State to show that the accused demanded an unreasonable amount of time and thereby interfered with the "prompt and purposeful investigation" of the case); *see also Snyder v. State*, 930 P.2d 1274, 1278 (Alaska 1996).

[18]  AS 28.35.033(e) (providing that the Department of Public Safety "shall make reasonable and good-faith efforts to assist the person being tested in contacting a person qualified to perform an independent chemical test").

[19]  *Snyder*, 930 P.2d at 1278.

independent testing facility the police must reasonably offer to the defendant. And while significant guidance for complying with the statutory mandate of AS 12.25.150(b) may be found in a line of cases beginning with the supreme court's decision in *Copelin*,[20] our case law provides little guidance for police officers tasked with assisting defendants in obtaining a chemical test of their own choosing under AS 28.35.033(e).

In this case, the trooper testified that he had never before encountered a person arrested for DUI who wanted an independent test of their own choosing rather than an independent test paid for by the State. The trooper apparently recognized that, as a registered nurse, Johnson's mother was a "qualified person" as defined by AS 28.35.033(e), but he testified that he was concerned that Johnson's mother would not have access to the proper equipment to draw blood in the middle of the night. Further, when the trooper explained to Johnson that the troopers could transport him to a facility of the State's choosing for a blood test and that the blood test would be free, Johnson immediately agreed to this plan. Even after Johnson had agreed to the free independent blood test at the facility chosen by the State, the trooper reminded Johnson that ultimately the choice of testing facilities was "up to you." And the trooper did not transport Johnson to the State's chosen facility until Johnson reaffirmed his decision to

---

[20] In *Copelin*, the supreme court noted that, since a minimum fifteen-minute waiting period is necessary before the police administer a breath test, no additional delay is incurred by acceding to a request to contact an attorney during that time. Police accordingly are required to allow defendants to contact their attorneys during this waiting period. *See Copelin*, 659 P.2d at 1211. And in subsequent cases, this Court held that even though police officers have a duty to maintain custodial observation of a defendant before administration of the breath test, the officers nevertheless must give the defendant a reasonable opportunity to hold a private conversation with an attorney. *See Kiehl v. State*, 901 P.2d 445, 446 (Alaska App. 1995); *Reekie v. Anchorage*, 803 P.2d 412, 415 (Alaska App. 1990); *Anchorage v. Marrs*, 694 P.2d 1163, 1165-66 (Alaska App. 1985); *Farrell v. Anchorage*, 682 P.2d 1128, 1130-31 (Alaska App. 1984).

forego a test of his own choosing and to instead obtain the free test offered by the State. Given these circumstances, the trooper's conduct was not unreasonable.

Indeed, the trial court did not find that the trooper acted unreasonably. Instead, the trial court found that application of the exclusionary rule was needed to deter the trooper from committing future violations of AS 28.35.033(e). But the record does not support the trial court's finding that the trooper was likely to commit future violations. At the evidentiary hearing, the trooper testified that if this situation arose again, he would ask more questions and he would provide a defendant with a test of their own choosing as long as he could "figure out how to make [the test] actually come about." In other words, the trooper testified that he would make good-faith, reasonable efforts to ensure that a defendant's right to an independent test of their own choosing was honored. This is what the law requires.

We accordingly conclude that, in this case, application of the exclusionary rule was not necessary to deter future misconduct by the police. And since we have also concluded that Johnson's ability to present a defense was not impacted by the statutory violation in this case, we must reverse the trial court's order suppressing the breath test result.

*Conclusion*

The trial court's order suppressing the result of the police-administered breath test is REVERSED. This case is REMANDED to the trial court for further proceedings consistent with this opinion.